JUDGE ABRAMS

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

19 CV 7642

| | |
|---|---|
| PEARSON EDUCATION, INC.; MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC; CENGAGE LEARNING, INC.; BEDFORD, FREEMAN & WORTH PUBLISHING GROUP, LLC; AND ELSEVIER INC., <br><br> Plaintiffs, <br><br> v. <br><br> DOE 1 D/B/A TITANIUM-JO AND EVO BOOKS; DOE 2 D/B/A PREMIUMDEALS_4 AND BOOKS UNLIMITED MOBILE; DOE 3 D/B/A EMICHEL47; DOE 4 D/B/A LEEKADATIONS; DOE 5 D/B/A 24HOURSHIPMENT; DOE 6 D/B/A TEXTBOOKS-HOLDER, CHALLENGE BOOK STORE PVT. LTD., AND VS BOOKS; DOE 7 D/B/A SUPERGLY; DOE 8 D/B/A MAYLASC_0, MMTRADELLC1, MMTRADELLC, IBMCORP2012, LPULSATIONS, AND LPULSATIONS; DOE 9 D/B/A LOFLON0, WISDOM INFINITY, AND COBERT'S LITTLE SHOP; DOE 10 D/B/A BOOKS MAZE AND PACKOFBOOKS; CHARLES E. KRACHY; TIMOTHY LENN MORGAN; JENNIFER DAWN WORMAN; JANTANA PAPHALA; NAZIR YAKUB BELIM; MICHAEL CHARLES MCKEE; CHRISTOPHER CLAUDE AULT; HALLIE RUTH MOORE; AND MARC HALAN BALDINGER, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT FOR:** <br><br> 1. **COPYRIGHT INFRINGEMENT** (17 U.S.C. § 101, *et seq.*); and <br> 2. **TRADEMARK COUNTERFEITING** (15 U.S.C. § 1114) <br><br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Pearson Education, Inc., McGraw-Hill Global Education Holdings, LLC,

Cengage Learning, Inc., Bedford, Freeman & Worth Publishing Group, LLC, and Elsevier Inc.

(hereinafter, collectively referred to as "Plaintiffs," and each individually as a "Plaintiff"), by and

through their undersigned counsel, hereby file their Complaint against Defendants Doe 1 d/b/a titanium-jo and EVO BOOKS; Doe 2 d/b/a premiumdeals_4 and Books Unlimited Mobile; Doe 3 d/b/a emichel47; Doe 4 d/b/a leekadations; Doe 5 d/b/a 24hourshipment; Doe 6 d/b/a textbooks-holder, CHALLENGE BOOK STORE PVT. LTD., and vs books; Doe 7 d/b/a supergly; Doe 8 d/b/a maylasc_0, mmtradellc1, mmtradellc, ibmcorp2012, Lpulsations, and Lpulsations; Doe 9 d/b/a loflon0, Wisdom Infinity, and Cobert's Little Shop; Doe 10 d/b/a Books Maze and PackofBooks; Charles E. Krachy; Timothy Lenn Morgan; Jennifer Dawn Worman; Jantana Paphala; Nazir Yakub Belim; Michael Charles McKee; Christopher Claude Ault; Hallie Ruth Moore; and Marc Halan Baldinger (hereinafter, collectively referred to as "Defendants," and each individually as a "Defendant").  Plaintiffs allege as follows on personal knowledge as to matters relating to themselves and on information and belief as to all other matters:

## NATURE OF THE CASE

1. This case arises out of extensive violations of the federal copyright and trademark laws.  Defendants are intentionally advertising, selling, and distributing counterfeit textbooks at the expense of authors, students, publishers, and others.

2. Plaintiffs are five of the leading educational publishers in the United States.  They provide a comprehensive range of traditional physical and digital educational content and tools to teachers, professionals, and secondary, post-secondary, and graduate-level students.

3. Defendants are merchants who conduct business in the United States by means of more than thirty online storefronts (collectively, the "Online Storefronts" or "Storefronts") primarily on eBay.com, as well as on Amazon.com, Abebooks.com, Alibris.com, TextbookX.com, Valore.com, eCampus.com, and Biblio.com (collectively, the "Online Marketplaces"). Defendants sell and distribute counterfeit textbooks on eBay or other Online Marketplaces.

Through their Online Storefronts, and attempting to hide behind the anonymity of the internet, Defendants sell counterfeit textbooks that infringe Plaintiffs' federally registered copyrights and bear unauthorized reproductions of Plaintiffs' federally registered trademarks.  Defendants sell the infringing textbooks to individual consumers, wholesale distributors, and other re-sellers.

4.     Plaintiffs sell their textbooks through various wholesale and retail channels.  Sales of Plaintiffs' textbooks on the Online Marketplaces—whether by wholesalers or individual resellers—represent an important sales channel for students looking to purchase Plaintiffs' textbooks.  Defendants advertise, offer, and sell their counterfeit textbooks on the Online Marketplaces to the same students and other consumers seeking out legitimate copies of Plaintiffs' textbooks on the Online Marketplaces.  Defendants identify the textbooks using the legitimate textbooks' respective titles, editions, authors, ISBN (the International Standard Book Number), and cover images bearing Plaintiffs' trademarks.  Defendants often sell their counterfeit copies well below market prices for the authentic books.  In so doing, Defendants undercut sales and the perceived value of authorized and legitimate copies of Plaintiffs' textbooks.

5.     Plaintiffs bring this Complaint for damages and injunctive relief to stop and to seek redress for Defendants' infringement of Plaintiffs' intellectual property rights.

## PARTIES

6.     Plaintiff McGraw-Hill Global Education Holdings, LLC ("MHE") is a Delaware limited liability company with a principal place of business at 2 Penn Plaza, New York, New York 10020.

7.     Plaintiff Bedford, Freeman & Worth Publishing Group, LLC ("Macmillan Learning") is a New York limited liability company with a principal place of business at One New York Plaza, New York, New York 10004, and is wholly owned by Macmillan Holdings, LLC,

also a New York limited liability company.

8.      Plaintiff Elsevier Inc. ("Elsevier"), is a Delaware corporation with a principal place of business at 230 Park Avenue, New York, New York 10169.

9.      Plaintiff Pearson Education, Inc. ("Pearson"), is a Delaware corporation with its principal place of business in Hoboken, New Jersey and an office located in New York.

10.     Plaintiff Cengage Learning, Inc., formerly Thomson Learning Inc. ("Cengage"), is a Delaware corporation with its principal place of business in Boston, Massachusetts and an office located in New York.

11.     Defendant Doe 1 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, titanium-jo on eBay and EVO BOOKS on Amazon.  The identity and location of Doe 1 are unknown to Plaintiffs.

12.     Doe 2 is a merchant offering for sale and selling counterfeit textbooks through its Storefronts, premiumdeals_4 on eBay, Books Unlimited Mobile on Amazon, Books Unlimited Mobile on eCampus.  The identity and location of Doe 2 are unknown to Plaintiffs.

13.     Defendant Doe 3 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, emichel47, on eBay.  The identity and location of Doe 3 are unknown to Plaintiffs.

14.     Defendant Doe 4 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, leekadations, on eBay.  The identity and location of Doe 4 are unknown to Plaintiffs.

15.     Defendant Doe 5 a merchant offering for sale and selling counterfeit textbooks through its Storefront, 24hourshipment, on eBay.  The identity and location of Doe 5 are unknown to Plaintiffs.

16.    Defendant Doe 6 a merchant offering for sale and selling counterfeit textbooks through its Storefronts, textbooks-holder on eBay, CHALLENGE BOOK STORE PVT. LTD on Biblio, and vs books on Amazon.  The identity and location of Doe 6 are unknown to Plaintiffs.

17.    Doe 7 is a merchant offering for sale and selling counterfeit textbooks through its Storefront, supergly on eBay.  The identity and location of Doe 7 are unknown to Plaintiffs.

18.    Doe 8 is a merchant offering for sale and selling counterfeit textbooks through its Storefronts, maylasc_0 on eBay, mmtradellc1 on eBay, mmtradellc on Amazon, ibmcorp2012 on eBay, Lpulsations on Alibris, and Lpulsations on TextbookX.  The identity and location of Doe 8 are unknown to Plaintiffs.

19.    Doe 9 is a merchant offering for sale and selling counterfeit textbooks through its Storefronts, loflon0 on eBay, Wisdom Infinity on Abebooks, and Cobert's Little Shop on Amazon. The identity and location of Doe 9 are unknown to Plaintiffs.

20.    Doe 10 is a merchant offering for sale and selling counterfeit textbooks through its Storefronts, Books Maze and PackofBooks on Valore.  The identity and location of Doe 10 are unknown to Plaintiffs.

21.    Defendant Charles E. Krachy is an individual who resides in Garrison, New York and operates the ckrachy Online Storefront on eBay.

22.    Defendant Timothy Lenn Morgan is an individual who resides in Auburn, Indiana and operates the tmorgan2017 and jennifermorgan2017 Online Storefronts on eBay.

23.    Defendant Jennifer Dawn Worman is an individual who resides in Auburn, Indiana and operates the tmorgan2017 and jennifermorgan2017 Online Storefronts on eBay.

24.    Defendant Jantana Paphala is an individual who resides in Long Beach, California and operates the itskawaiiaf Online Storefront on eBay.

25.     Defendant Nazir Yakub Belim is an individual who resides in Hawthorne, California and operates the nazfozdar Online Storefront on eBay.

26.     Defendant Michael Charles McKee is an individual who resides in Burns, Tennessee and operates the siulaw73 Online Storefront on eBay.

27.     Defendant Christopher Claude Ault is an individual who resides in Ooltewah, Tennessee and operates the kipault7 Online Storefront on eBay, the Huckleberry's Books Online Storefront on Abebooks, and the Huckleberry's Books Online Storefront on Amazon.

28.     Defendant Hallie Ruth Moore is an individual who resides in Pikeville, Tennessee and operates the bigbluecape Online Storefront on eBay.

29.     Defendant Marc Halan Baldinger is an individual who resides in Stuart, Florida and operates the marbaldinge-0 Online Storefront on eBay.

## JURISDICTION AND VENUE

30.     This is a civil action arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*  As such, the Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121.

31.     The Court has personal jurisdiction over Defendants pursuant to N.Y. C.P.L.R. § 302 or, in the alternative, Federal Rule of Civil Procedure 4(k), because Defendants transact business in New York, committed tortious acts within New York, and/or caused injury to Plaintiffs in New York, and Plaintiffs' claims arise from those activities.  In particular, Defendants (a) transact business in New York and/or contract to supply goods, including counterfeit goods, in New York, (b) have committed acts of copyright and trademark infringement and counterfeiting in New York and in this District, and/or (c) have committed acts of copyright and trademark infringement and counterfeiting outside New York causing injury to Plaintiffs in New York,

expected or should reasonably have expected such acts to have consequences in New York, and derive substantial revenue from interstate or international commerce.  In addition, Defendants sell textbooks, including counterfeit copies of Plaintiffs' copyrighted textbooks bearing Plaintiffs' trademarks, through online storefronts on highly interactive websites, such as eBay.com, which are continuously accessible, and target, sell, and ship goods, to consumers in New York.

32.     The Court also has general personal jurisdiction over Defendant Charles E. Krachy under N.Y. C.P.L.R. § 301 because he is domiciled in New York.

33.     Venue is proper, *inter alia*, pursuant to 28 U.S.C. §§ 1391(b) because Defendants conduct, transact, and/or solicit business in this District.

## FACTUAL ALLEGATIONS

### A.     Plaintiffs' Businesses

34.     Plaintiffs are among the largest providers of textbooks and tailored learning solutions.  In the academic marketplace, Plaintiffs serve secondary, post-secondary, and graduate-level students, teachers, and learning institutions providing quality content and assessment material in physical, digital, and multi-media formats.  Plaintiffs' publications include physical textbooks.  These textbooks are widely available in the marketplace for sale or rental, including from physical and online bookstores.  Plaintiffs' products are sold throughout the United States and in many other countries, through direct sales channels and via a network of distributors.

35.     Plaintiffs publish their works under many imprints, or brands, that are well known and highly respected.  For example, Cengage's imprints include Brooks/Cole, Delmar, Heinle, and South-Western Educational Publishing; Pearson's imprints include Addison Wesley, Allyn & Bacon, and Benjamin Cummings; MHE's imprints include Irwin, Lange, and McGraw-Hill Higher Education; Macmillan Learnings' imprints include Bedford/St. Martin's, W.H. Freeman &

Company, and Worth Publishers; and Elsevier's imprints include Morgan Kaufmann Publishers, Mosby, and Saunders.  These are just some of Plaintiffs' many valuable and recognizable imprints. **Exhibit A** includes a complete list of Plaintiffs' imprints for purposes of their claims against Defendants (the "Imprints").

36.     Plaintiffs invest significant time and money into publishing their textbooks. Plaintiffs (and/or their predecessors) have invested decades of effort in building a reputation of quality in the publishing industry, which consumers associate with Plaintiffs and their trademarks. Plaintiffs advertise and promote their goods in the United States under their respective trademarks. Plaintiffs' trademarks and the goodwill of the business associated with them in the United States are of tremendous value and have become associated in the public mind with each Plaintiff's reputation for publishing textbooks of the very highest quality.

37.     Plaintiffs suffer serious financial and reputational injury when their copyrights and trademarks are infringed.  Both publishers and authors alike are deprived of income when their textbooks are unlawfully copied and sold, or when their copyrights are otherwise infringed, which can have serious financial and creative repercussions for them and their work.  A substantial decline in revenue from sales or rentals of Plaintiffs' copyrighted works could cause Plaintiffs to cease publishing one or more deserving textbooks.  This would have an adverse impact on the creation of new textbooks, on scholarly endeavor, as well as on the availability and quality of educational content in the humanities, sciences, and social sciences.

### B.     Plaintiffs' Respective Copyright Registrations

38.     Plaintiffs are the copyright owners of, and/or the owners of the exclusive rights under copyright in, *inter alia*, the works or derivative works described on **Exhibit B** (the "Authentic Works").  Plaintiffs or their affiliates have obtained copyright registrations, duly issued by the United States Copyright Office, covering their respective Authentic Works.

### C.    Plaintiffs' Respective Trademark Registrations

39.    Plaintiffs' Authentic Works bear trademarks as set forth on **Exhibit C** (the "Marks"), which Plaintiffs or their affiliates have duly registered on the Principal Register of the United States Patent and Trademark Office.  Plaintiffs own or are the exclusive licensee of their respective Marks.  Plaintiffs' Marks are distinctive and arbitrary and many are now incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

### D.    The Online Marketplaces

40.    eBay.com is a global e-commerce platform.  The eBay online marketplace allows third-party sellers worldwide to advertise, offer for sale, and sell books, both new and used, directly to consumers.  According to its financial statements, eBay enabled $95 billion of gross merchandise volume in 2018.  eBay currently has more than 180 million active buyers and over one billion live listings globally.

41.    The eBay site has an expansive search function giving consumers the ability to search for books by any combination of ISBN, title, author, and a number of other criteria.  Thus, with just a few keystrokes, consumers can see a list of sellers offering a particular textbook title. Each, or nearly each, listing for the title displays a stock image of the cover of the book and identifies the price of the book, whether it is available to "Buy It Now" or by auction, the cost of shipping, and whether the book offered for sale is new or used and, if used, the condition of the book.  To unsuspecting individual consumers, the listings all appear to be for legitimate copies of textbooks because they are listed with the same cover image, ISBN, edition, author, and publisher. The consumer is left to select the book he or she wants to purchase, which all too often is based solely or largely on the price offered.

42.    When a seller receives an order through their online storefront on eBay, the seller ships the purchased item directly to the customer.  eBay sellers choose the payment methods their

storefront will accept, such as PayPal or credit cards.

43.     Like eBay, Amazon.com, Inc. is a global e-commerce company; it is also the world's largest e-commerce retailer.  In addition to providing a platform for Amazon's own sales, Amazon is a marketplace for third-party sellers to advertise, offer for sale, and sell their products or goods directly to consumers.  Each day, millions of consumers use Amazon's marketplace to purchase a wide range of products, including textbooks, from Amazon and third-party sellers.

44.     Amazon provides third-party sellers on its platform the option of using its Fulfillment by Amazon ("FBA") service, which allows sellers to outsource warehouse, shipping, and customer service operations to Amazon in exchange for additional fees.  FBA sellers ship their products to one of Amazon's fulfillment centers across the country and Amazon stores, packs, ships, and handles customer service and returns for the FBA seller's goods.  Buyers never interact with FBA sellers directly unless they have an inquiry and choose to communicate with the seller, which is done anonymously through Amazon's platform.

45.     A key feature of the Amazon marketplace is that multiple sellers can offer the same product.  Each product sold on Amazon is listed on or in connection with a product detail page, which includes a product image, prices, description, customer reviews, ordering options, and links to view offers from all marketplace sellers of the product.

46.     Product detail pages for textbooks on Amazon are tied to the respective textbook's ISBN.  Accordingly, on Amazon there is a single product page[1] for each of Plaintiffs' textbooks that lists multiple sellers, including those who may be selling counterfeits.  To unsuspecting

---

[1] While Amazon instructs its sellers to list textbooks under the existing product page identified by the textbook's unique ISBN, some sellers violate that policy by creating a different product page for a particular textbook linked to a unique ASIN (Amazon Standard Identification Number)—the number Amazon uses to identify each unique, non-book product sold on the marketplace—instead of the ISBN.

individual consumers, the offers all appear to be for legitimate copies of textbooks because they are listed under the same product page as the authentic version.  Consumers are left to choose which price they want to pay and from which seller.

47.     Customers may leave a substantive review about a product on the product detail page.  Customers may also leave a review about the buying or shipping experience or the quality of the particular product they received.  On the product page, therefore, there often are substantive reviews as well as reviews that comment on the buyer's experience with the particular seller that sold the product.  As such, someone who purchases a textbook on Amazon.com may leave a review complaining about the book's inferior quality, as is often the case with counterfeits, on the textbook's product page.  The name of the seller that supplied the counterfeit, or otherwise provided the consumer with an unsatisfactory experience, is not associated with the textbook's product page.  As a result, the overall review—and perceived value—of the author's and publisher's work deteriorates.

48.     Abebooks.com is a global e-commerce platform that specializes in the sale of books and textbooks.  Abebooks is a wholly owned subsidiary of Amazon.com, Inc.  The Abebooks online marketplace allows third-party sellers to advertise, offer, and sell textbooks, both new and used, directly to consumers.  Similarly, Alibris.com, TextbookX.com, Valore.com, and Biblio.com are global e-commerce platforms specializing in the sale of books and textbooks.  These Online Marketplaces allow third-party sellers worldwide to advertise, offer for sale, and sell books, both new and used, directly to consumers.

49.     The Abebooks, Alibris, TextbookX, Valore, and Biblio sites provide consumers the ability to search for books by ISBN or title and author.  Thus, with just a few keystrokes, consumers can see a list of third-party sellers offering a title, ranked (by default) from lowest to highest price.

Each listing for the title displays a stock image of the cover of the book and describes whether the book offered for sale is new or used and, if used, the condition of the book. To unsuspecting individual consumers, the listings all appear to be for legitimate copies of textbooks because they are listed with the same cover image, ISBN, edition, author, and publisher. The consumer is left to select the book he or she wants to purchase, which all too often is based solely or largely on the price offered.

50.     When a seller receives an order through their online storefront on Abebooks, Alibris, TextbookX, Valore, or Biblio, the seller ships the book(s) directly to the customer. Abebooks, Alibris, TextbookX, Valore, and Biblio process the ensuing payments, and then distribute the sales proceeds to sellers on a regular, automated schedule to the financial institution accounts registered to the respective Abebooks, Alibris, TextbookX, Valore, or Biblio seller account.

### E.     The Pernicious Counterfeiting Problem

51.     Textbook counterfeiting is rampant, particularly as a result of the ease by which counterfeiters across the world can sell counterfeit textbooks to U.S. consumers via the many well-known online marketplace platforms.

52.     Counterfeit textbooks are often printed overseas and imported into the lucrative U.S. market. While counterfeit books may vary in quality level, many are of inferior quality to legitimate books, including with respect to bindings, printing, and other problems.

53.     While some consumers never know they have purchased a counterfeit textbook, others learn the book is counterfeit after the book's binding starts falling apart, or pages begin falling out. Many other consumers apparently do not realize that the poor-quality book they received is the work of counterfeiters, and instead think the publishers' textbooks are low quality.

54.     Counterfeiters often expend significant effort to conceal their identities and often

use multiple or fictitious names and addresses to register and operate what has become a massive network of online storefronts. Sellers need only have a valid bank account number to receive their sales proceeds and/or a valid credit card number to pay fees for selling on the marketplace. Nonetheless, there are often similarities among the storefronts. The counterfeit books may also share similar indicia of being counterfeit, which suggests that the counterfeit books were printed by and come from a common source.

55.     In addition to operating under multiple fictitious names, counterfeiters use a variety of other tactics to evade discovery and continue their lucrative, illicit business. For example, once a counterfeiter receives notice of a lawsuit, he or she will often create new seller accounts on the Online Marketplaces using new aliases and/or email addresses. Further, counterfeiters often use multiple internet merchant accounts or other payment processing accounts (such as with PayPal or Payoneer) so that they can nimbly switch between accounts to evade detection and secure their illicit proceeds. It is also common for counterfeit sellers to maintain off-shore bank accounts outside the jurisdiction of the Court, into which they often move the proceeds of their illegal sales.

56.     Plaintiffs actively enforce their copyrights and trademarks. They have and continue to expend great effort combatting textbook counterfeiting worldwide. Plaintiffs also go to great lengths to educate distributors about the counterfeiting problem in the textbook industry. In particular, Plaintiffs have worked with many distributors to create "Best Practices" to help them avoid sourcing counterfeit textbooks.

**F.     Defendants' Unlawful Activities**

57.     Through their enforcement efforts, Plaintiffs have confirmed that Defendants sell unauthorized and illegal counterfeit textbooks, including Plaintiffs' Authentic Works, on eBay and other Online Marketplaces. Plaintiffs have made purchases from Defendants' Online Storefronts, as described on Exhibit B, which confirm that Defendants distribute counterfeit copies of

Plaintiffs' Authentic Works bearing Plaintiffs' Marks (collectively, the "Counterfeit Books," and each a "Counterfeit Book").

58.     Through their Online Storefronts, Defendants target and ship their infringing textbooks to customers located in the United States, including New York.

59.     While Plaintiffs have identified some of the Counterfeit Books that Defendants have distributed, Plaintiffs have not identified all of them.  There are more than 110 unique titles (Authentic Works) in the list of Counterfeit Books on Exhibit B.  Exhibit B describes Counterfeit Books that Plaintiffs purchased from Defendants, as well as Counterfeit Books that Defendants drop-shipped to Plaintiffs on behalf of a third-party, and Counterfeit Books that distributors surrendered to Plaintiffs after receiving them from Defendants.  However, these are just examples of the counterfeit textbooks that Defendants have introduced into the market.  The list of thirteen Marks on Exhibit C likewise does not describe all the Marks that Defendants are infringing, as they represent just those Marks on the Counterfeit Books listed on Exhibit B.  Moreover, the number of textbook titles Defendants have infringed is not the same as the number of counterfeit copies Plaintiffs received from Defendants.  Plaintiffs purchased or received from many of Defendants' Online Storefronts multiple counterfeit copies of individual textbook titles.

60.     Plaintiffs' discovery of Defendants' counterfeiting activities has been challenging and time-consuming.  Infringing activity typically takes place behind closed doors.  The Defendants here attempt to hide behind the anonymity of their Storefronts.  Customers receive little to no information on the Online Marketplaces identifying the sellers behind the Storefronts. Defendants fulfill their orders by shipping or arranging to have a third party ship books directly to customers.  However, the Defendants' true identities and addresses often remain concealed.

61.     For example, several Defendants operate their Online Storefronts as "FBA sellers,"

i.e., Defendants ship their textbooks to one of Amazon's fulfillment centers, and Amazon fulfills Defendants' orders on their behalf.  Thus, Defendant Doe 9 uses FBA to fulfill orders received by his Online Storefront, loflon0; accordingly, the return address on packages received from loflon0 identifies one of Amazon's fulfillment centers.  Doe 7 operates supergly on eBay by using a return address for a UPS store in Torrance, California, which conceals the seller's true identity.  Finally, the packages containing the Counterfeit Books Plaintiffs purchased from Doe 2 identify a name and address in Winterville, North Carolina.  However, Plaintiffs have not been able to locate anyone with the name at issue anywhere in North Carolina.

62.     Defendants likely operate other online storefronts on the Online Marketplaces or other e-commerce platforms that Plaintiffs are not aware of yet.  By way of example, Plaintiffs were able to link six different Online Storefronts, across four different Online Marketplaces, to Defendant Doe 8 because each Online Storefront sold textbooks that were returnable to the same address in New Lenox, Illinois.  This Defendant, and probably others, is likely operating still other Online Storefronts, potentially on other e-commerce platforms, that Plaintiffs have not discovered yet.  Defendants may also be drop-shipping counterfeit textbooks for third-parties.  Drop-shipping generally occurs when a store or merchant does not have in its inventory a product that it sells or has sold.  Instead, the merchant purchases the item from a third party and has it shipped directly to the customer.  For example, Plaintiffs made a purchase from "mediabooksupply" on eBay.com, but received a counterfeit textbook that identified the Huckleberry's Books (Defendant Ault's Storefront) in the return information.

63.     Many of the Counterfeit Books Plaintiffs received from Defendants were listed as used, but in "very good" or "like new" condition, despite being in brand-new condition.  For example, Plaintiffs purchased a copy of *Human Resource Management*, 7th edition, ISBN

9781305115248, which was listed in "Used-Good" condition, from the leekadations Online Storefront on eBay. But, rather than receiving the legitimate textbook, Plaintiffs received what appears to be a brand-new, shrink-wrapped counterfeit copy.

64.     Certain Defendants' Storefronts contain reviews from customers complaining that they received what appears to be a counterfeit textbook. For example, one reviewer on Doe 6's textbooks-holder Storefront complained in 2018, "Books are knockoffs/inauthentic from India, NOT original US books." Yet, Doe 6 kept right on selling its counterfeits, including eight counterfeit textbooks to Plaintiffs. Doe 2's Books Unlimited Mobile Storefront likewise received a one-star review on April 12, 2017 complaining, "I am a book seller and I have a genuine copy of the book I purchased. The book that was delivered to me is a counterfeit. I will contact Amazon and I will contact McGraw Hill." Doe 2 saw the review and refunded the purchaser but kept selling its counterfeits, including three in the last year.

65.     Certain Defendants also have received notices of infringement. However, rather than stopping the sale of counterfeit books, such sales have continued unabated. For example, Plaintiffs sent eBay an infringement notice on June 10, 2019 related to the sale of nine counterfeit books by Defendant Krachy. Plaintiffs purchased three additional counterfeits from Defendant Krachy's Storefront since that time, including one as recently as July 9, 2019.

66.     Certain Defendants' counterfeit sales predate 2019. For example, between September and December 2018, Plaintiffs purchased six counterfeit books from Defendant Doe 4's Storefront leekadations. Similarly, a third-party book distributor surrendered thirteen copies of *Essentials Sociology*, 12th (Pearson) in May 2019 that it had acquired from Cobert's Little Shop in 2017. Upon review, all were determined to be counterfeit.

67.     Defendants intentionally purchase counterfeit copies of Plaintiffs' Authentic Works

at materially cheaper prices than they would be required to pay had they purchased Plaintiffs' Authentic Works directly from the respective publishers or from legitimate third-party sellers.  In doing so, Defendants deliberately evade legitimate sources, instead sourcing illegal and counterfeit copies of Plaintiffs' Authentic Works.

68.     Defendants, in turn, often sell the Counterfeit Books at "too good to be true" prices.  For example, Plaintiffs purchased a copy of *Police Administration: Structures, Processes, and Behavior*, 9th Edition, ISBN 9780133754056, which was listed as "Brand New" from ckrachy on eBay for $89.95.  The suggested retail price for this title is $179.99.  Rather than receiving the legitimate textbook, Plaintiffs received a counterfeit, in what appears to be brand-new condition.

69.     The Counterfeit Books Defendants distribute are different from and/or inferior to Plaintiffs' Authentic Works.  For example, the Counterfeit Books' binding, glue, paper, color and printing, among other traits, are different and inferior.  Based on the use of Plaintiffs' Marks, actual and prospective purchasers are likely to believe that the Counterfeit Books are authorized and legitimate copies of Plaintiffs' Authentic Works.  The Counterfeit Books' inferior quality weakens, blurs, and tarnishes Plaintiffs' respective trademarks.  Plaintiffs' business reputations are further injured by having their trademarks and goodwill confused or mistakenly associated with textbooks of lesser quality.

70.     Some Defendants appear to be working collectively because many of the Counterfeit Books exhibit the same counterfeit traits and inferior qualities, and several of the Storefronts offer similar inventories.

71.     As is typical for counterfeiters, Defendants attempt to evade enforcement efforts in a number of ways.  For example, some of the Online Storefronts have changed their name, sometimes multiple times, such as mmtradellc, which was previously called BbBooks, BkrLLC,

Book55, DealsBook, DNRBook, EL-Books, Erfibook, FOTextBook, IceBook, KCMBook, LifeText, MileBooks, Mmbook, MMTRADE, NYSBook, Peet's, ShoppingBook, Start Book, T-RBooks, TextBookLove, TextBookMI, Text_Book1, Texxtbooks, and TTbook.

72.     Defendants' intentional and deceitful misconduct has resulted in lost profits to Plaintiffs and has damaged the inherent value of Plaintiffs' Authentic Works and Marks, impaired Plaintiffs' reputations for providing high-quality higher education textbooks, and diluted Plaintiffs' brands and the goodwill associated with them, all of which negatively affects Plaintiffs' relationships with distributors, authors, teachers, and students.

## FIRST CLAIM FOR RELIEF

### Copyright Infringement Under 17 U.S.C. §§ 101, *et seq.*

73.     Plaintiffs re-allege and incorporate by reference the allegations set forth above in paragraphs 1-72.

74.     Plaintiffs' Authentic Works constitute original works and copyrightable subject matter pursuant to the Copyright Act, and they are protected by registrations duly issued to Plaintiffs (or their predecessors or affiliates) by the United States Copyright Office.

75.     At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective copyrights in Plaintiffs' Authentic Works, which have never been assigned, licensed, or otherwise transferred to Defendants.

76.     Beginning on an unknown date but at least since April 2017 and continuing to the present, Defendants, with knowledge of Plaintiffs' copyrights in Plaintiffs' Authentic Works, have infringed Plaintiffs' copyrights.  Specifically, Defendants infringed Plaintiffs' exclusive rights to control distribution of their copyrighted works.  They did so by, among other things, selling the

Counterfeit Books for profit, without Plaintiffs' permission, license, or consent, in violation of 17 U.S.C. § 106.

77.     Defendants' unlawful conduct, as set forth above, was willful.  Defendants had actual and/or constructive knowledge that their conduct was unlawful and in violation of Plaintiffs' copyrights.  Defendants acted intentionally and in reckless disregard of Plaintiffs' copyrights.

78.     As a result of Defendants' unlawful and deliberate conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

79.     Defendants' actions described above have caused and will continue to cause irreparable damage to Plaintiffs, for which Plaintiffs have no remedy at law.  Unless this Court restrains Defendants from continuing their infringement of Plaintiffs' copyrights, these injuries will continue to occur in the future.  Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further infringement, as well as other appropriate equitable relief, as specified below.

## SECOND CLAIM FOR RELIEF

### Trademark Counterfeiting Under 15 U.S.C. § 1114(1)(a)

80.     Plaintiffs reallege and incorporate by reference the allegations set forth above in paragraphs 1-72.

81.     This claim, arising under Section 32 of the Lanham Act, 15 U.S.C. § 1114, is for counterfeiting of Plaintiffs' Marks.  At all relevant times, Plaintiffs have been and still are the owners, or exclusive licensees, of all rights, title, and interest in and to their respective Marks, which are valid and protectable trademarks that are registered with the United States Patent and Trademark Office.

82.     Beginning on an unknown date but at least since April 2017 and continuing to the

19

present, Defendants have infringed Plaintiffs' federally registered Marks through their use in commerce, without Plaintiffs' consent, of a counterfeit, copy, or colorable imitation of Plaintiffs' Marks, in connection with the sale, offering for sale, distribution, and/or advertising of the Counterfeit Books, and such use is likely to cause confusion, to cause mistake, and/or deceive the public.

83.     The spurious, counterfeit marks on the Counterfeit Books that Defendants have distributed are identical to and/or substantially indistinguishable from Plaintiffs' Marks that appear on Plaintiffs' Authentic Works.

84.     Defendants have acted intentionally and in reckless disregard of Plaintiffs' trademark rights.  Defendants are intentionally using Plaintiffs' Marks on unauthorized products and infringing upon Plaintiffs' trademark rights in order to further their own business enterprises.

85.     Defendants' unlawful conduct, as set forth above, was willful.  Defendants had actual and/or constructive knowledge that their conduct was unlawful and would cause confusion, mistake, or deception.

86.     As a result of Defendants' unlawful conduct as set forth above, Plaintiffs have been, and will continue to be, damaged.

87.     Defendants' counterfeiting of Plaintiffs' Marks, as described above, has caused and will continue to cause irreparable injury to Plaintiffs, including to their reputation and goodwill, for which Plaintiffs have no adequate remedy at law.  Unless this Court restrains Defendants from continuing their counterfeiting activities, these injuries will continue to occur in the future. Plaintiffs are accordingly entitled to injunctive relief restraining Defendants from further counterfeiting, as well as other appropriate equitable relief, as specified below.

## PRAYER FOR RELIEF

By reason of the acts and circumstances alleged above, Plaintiffs seek relief from this Court as follows:

1.      Judgment on each of the claims set forth above, including that Defendants' infringement of Plaintiffs' Authentic Works and Marks was intentional and willful.

2.      Damages and/or restitution according to proof at trial, including exemplary damages where authorized by statute;

3.      An accounting and disgorgement of Defendants' profits, gains, and advantages realized from their unlawful conduct, including a reconciliation of purchases and sales of the Counterfeit Books with documents relating to all such purchases and sales;

4.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful acts as alleged above, including actual damages or statutory damages, at Plaintiffs' election, pursuant to 17 U.S.C. § 504;

5.      An order enjoining Defendants and those in active concert with them from further infringing upon Plaintiffs' respective copyrights pursuant to 17 U.S.C. § 502;

6.      An order enjoining Defendants and those in active concert with them from further infringing upon Plaintiffs' respective trademarks pursuant to 15 U.S.C. § 1116;

7.      An order requiring Defendants to pay Plaintiffs such damages as Plaintiffs have sustained as a consequence of Defendants' unlawful use of their trademarks, as alleged above, including statutory damages or treble damages, pursuant to 15 U.S.C. § 1117;

8.      An order requiring Defendants to deliver up for destruction all products, packaging, labels, literature, advertising, and other material bearing imitations, including confusingly similar

variations, of Plaintiffs' respective copyrights and marks pursuant to 17 U.S.C. § 503 and 15

U.S.C. § 1118;

      9.      Prejudgment and post-judgment interest at the applicable rate;

    10.     Plaintiffs' attorney's fees, expenses, and costs of suit; and

    11.     Such other and further relief the Court deems proper.

### JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury.


DATED:  August 15, 2019           Respectfully submitted,

                By: _____

                Matthew J. Oppenheim
                Matthew I. Fleischman
                OPPENHEIM + ZEBRAK, LLP
                4530 Wisconsin Avenue NW, 5th Floor
                Washington, DC 20016
                Tel:  (202) 480-2999
                Fax:  (866) 766-1678
                matt@oandzlaw.com
                fleischman@oandzlaw.com

                *Attorneys for Plaintiffs*