UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 6/30/2020

PEARSON EDUCATION, INC., MCGRAW-
HILL GLOBAL EDUCATION HOLDINGS,
LLC, CENGAGE LEARNING, INC., BEDFORD,
FREEMAN & WORTH PUBLISHING GROUP,
LLC, AND ELSEVIER INC.,

                    Plaintiffs,

          v.

ABC BOOKS LLC *et al.*,

                    Defendants.

19-CV-7642 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs Pearson Education, Inc., McGraw-Hill Global Education Holdings, LLC, Cengage Learning, Inc., Bedford, Freeman & Worth Publishing Group, LLC, and Elsevier Inc. filed this action for copyright infringement, trademark infringement, and breach of contract. Now before the Court is Defendant Christopher Claude Ault's motion to dismiss the First Amended Complaint pursuant to Federal Rules of Civil Procedure 8(a), 12(b)(2), and 12(b)(6). For the reasons that follow, Defendant Ault's motion is denied.

## BACKGROUND[1]

### I. Factual Background

#### A. The Relevant Parties

Plaintiffs are leading publishers of educational textbooks. FAC ¶ 2. They "provide a comprehensive range of traditional physical and digital educational content and tools to teachers,

---

[1] The facts in this section are drawn from Plaintiffs' First Amended Complaint, Dkt. 65 (the "FAC" or "Complaint"), and the exhibits attached thereto, and are assumed to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017); *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008).

professionals, and secondary, post-secondary, and graduate-level students" throughout the United States.  *Id.*  Plaintiffs' textbooks are "widely available in the marketplace for sale or rental, including from physical and online bookstores."  *Id.* ¶ 43.  They "publish their works under many imprints, or brands, that are well known and highly respected," *id.* ¶ 44, and their products are sold "through direct sales channels and via a network of distributors" both domestically and internationally, *id.* ¶ 43.  Plaintiffs own copyrights and/or the exclusive rights under copyright in various "Authentic Works."  *See id.* ¶ 47; FAC Ex. C.  Plaintiffs' Authentic Works bear trademarks (the "Marks"), and Plaintiffs own or are the exclusive licensees of their respective Marks.  *See* FAC ¶ 48; FAC Ex. D.

All five Plaintiffs maintain a place of business in New York.  Specifically, McGraw-Hill Global Education Holdings, LLC ("McGraw-Hill"), a Delaware limited liability company, Elsevier Inc. ("Elsevier"), a Delaware corporation, and Bedford, Freeman & Worth Publishing Group, LLC ("Bedford"), a New York limited liability company, all maintain their principal places of business in New York, New York.  *See* FAC ¶¶ 6-8.  In addition, both Pearson Education, Inc. ("Pearson") and Cengage Learning, Inc. ("Cengage"), Delaware corporations with their principal places of business in New Jersey and Massachusetts respectively, have offices located in New York.  *See id.* ¶¶ 9-10.

Plaintiffs filed this action against a host of defendants—"merchants who conduct business in the United States" through more than thirty "Online Storefronts," which are located on websites such as eBay.com, Amazon.com, Abebooks.com, Alibris.com, TextbookX.com, Valore.com, eCampus.com, and Biblio.com (the "Online Marketplaces").  *Id.* ¶ 3.  Defendant Ault, an

individual who resides in Tennessee, operates the following Online Storefronts: (1) kipault7 on eBay; (2) Huckleberry's Books on Abebooks, and (3) Huckleberry's Books on Amazon.  *Id.* ¶ 34.[2]

### B.  The Online Marketplaces

According to the Complaint, Ault sells textbooks on three Online Marketplaces: eBay, Amazon, and Abebooks.  *See id.* ¶ 34.  eBay.com is a "global e-commerce platform" that allows "third-party sellers worldwide to advertise, offer for sale, and sell books . . . directly to consumers."  *Id.* ¶ 49.  When a seller receives an order "through their online storefront on eBay," the seller "ships the purchased item, or arranges to have it shipped, directly to the consumer."  *Id.* ¶ 51. Amazon.com is a "global e-commerce company" that similarly provides a "marketplace for third-party sellers to advertise, offer for sale, and sell their products or goods directly to consumers."  *Id.* ¶ 52.  Amazon also allows customers to leave substantive reviews about the product in general, "the buying or shipping experience," and/or "the quality of the particular product they received."  *Id.* ¶ 56.  Abebooks.com, a wholly owned subsidiary of Amazon.com, is a "global e-commerce platform" that "specializes in the sale of books and textbooks."  *Id.* ¶ 57.  Like eBay and Amazon, Abebooks "allows third-party sellers to advertise, offer, and sell textbooks . . . directly to consumers."  *Id.*  According to Plaintiffs, when a seller receives an order through their online

---

[2] Plaintiffs' First Amended Complaint also names as Defendants ABC Books LLC, Fidaa Hashemi, Leonard Johnson, Alec Sanders, Alex Luckhardt, Bronislav Teplitskiy, Challenge Book Store Pvt. Ltd., Ranjan Kumar Behera, Glynis Labos, Geoffery Labos, Light Pulsations LLC, Despot Despotovic, Maylourd Ascrate, Abdulhadi Yildirim, Rodney Blanks, Soarabh Gupta, Madhu Gupta, Charles E. Krachy, Timothy Lenn Morgan, Jennifer Morgan, Jantana Paphala, Nazir Yakub Belim, Michael Charles McKee, Hallie Ruth Moore, and Marc Halan Baldinger.  On December 17, 2019, the Court granted Plaintiffs' motion for alternative service as to Defendants ABC Books LLC, Fidaa Hashemi, Challenge Book Store Pvt. Ltd., Ranjan Kumar Behera, Maylourd Ascrate, Soarabh Gupta, and Madhu Gupta.  *See* Dkt. 85.  To date, this action has been voluntarily dismissed as to Defendants Hallie Ruth Moore, Dkt. 80, Timothy Lenn Morgan, Dkt. 86, Jennifer Morgan, Dkt. 86, Jantana Paphala, Dkt. 107, Marc Halan Baldinger, Dkt. 118, and Charles E. Krachy, Dkt. 126.  Defendants Despot Despotovic, Light Pulsations LLC, and Abdulhadi Yildirim have filed answers to the Complaint.  *See* Dkt. 111 (Despotovic & Light Pulsations); Dkt. 112 (Yildirim).  Additionally, on January 6, 2020, Defendant Rodney Blanks, proceeding *pro se*, filed an answer, Dkt. 92, as well as a letter titled "Opposition to Plaintiffs [sic] First Amended Complaint," Dkt. 93, which appears to be a further denial of the claims asserted against him.  Finally, on May 1, 2020, Plaintiffs filed a motion to strike Defendant Yildirim's answer, *see* Dkt. 113, to which Yildirim filed an opposition on June 1, 2020, *see* Dkt. 121, and Plaintiffs filed a reply on June 8, 2020, *see* Dkt. 123.

storefront on Abebooks, "the seller ships the book(s), or arranges to have the book(s) shipped, directly to the consumer." *Id.* ¶ 59.

### C. Defendants' Alleged Infringement and Counterfeiting

Plaintiffs contend that Defendants "sell unauthorized and illegal counterfeit textbooks, including counterfeit copies of Plaintiffs' Authentic Works," on the Online Marketplaces. *Id.* ¶ 66. They assert that, through their Online Storefronts, Defendants sell and distribute counterfeit textbooks that "infringe Plaintiffs' federally registered copyrights and bear unauthorized reproductions of Plaintiffs' federally registered trademarks," *id.* ¶ 3, and through the Online Marketplaces, they "advertise, offer, and sell their counterfeit textbooks" to students and "other consumers seeking out legitimate copies of Plaintiffs' textbooks," *id.* ¶ 4.

Plaintiffs assert further that Defendants "target and ship" their infringing textbooks (the "Counterfeit Books") to customers located in the United States, including "in some instances," to customers located in New York. *Id.* ¶ 67. Plaintiffs contend in particular that the Defendants who operate "Amazon Storefronts" have "sold copies of textbooks published by Plaintiffs to customers in New York," and that the Defendants who operate "eBay Storefronts" have similarly "sold goods to customers in New York, including, in most instances, copies of textbooks published by Plaintiffs, via such Storefronts." *Id.* Plaintiffs apparently acquired certain Counterfeit Books by "purchasing them directly from Defendants' Online Storefronts, purchasing them from drop-shippers that sourced the Counterfeit Books from the Defendants, and/or from book distributors who purchased [the Books] from Defendants and surrendered them to Plaintiffs after suspecting them to be counterfeit." *Id.* ¶ 69.

Plaintiffs also assert that Defendants "know or should know" that they are selling and distributing Counterfeit Books by, among other things, receiving "Notices of Infringement." *Id.* ¶ 75. In June 2019, Plaintiffs submitted "Notices of Infringement" to eBay with respect to "all of

4

the Defendants' eBay Storefronts," which eBay then "provided to the Storefronts." *Id.* Plaintiffs allege, however, that "Defendants continued to sell Plaintiffs' Books, including some of the Counterfeit Books, after receiving these Notices" and/or that they "never contacted Plaintiffs before this suit was filed." *Id.*

According to Plaintiffs, Defendants' Counterfeit Books are "different from and/or inferior to Plaintiffs' Authentic Works," and the "inferior quality" thus "weakens, blurs, and tarnishes Plaintiffs' respective Marks" and damages Plaintiffs' business reputations. *Id.* ¶ 70. Plaintiffs assert further that their trademarks and "the goodwill of the business associated with them" in the United States "are of tremendous value" and have become associated with their public reputation of "publishing textbooks of the very highest quality." *Id.* ¶ 45. They allege that they suffer "serious financial and reputational injury when their copyrights and trademarks are infringed." *Id.* ¶ 46. In particular, Plaintiffs allege that Defendants' infringement has "resulted in lost profits to Plaintiffs," "damaged the inherent value of Plaintiffs' Authentic Works and Marks," "impaired Plaintiffs' reputations for providing high-quality higher education textbooks," and "diluted Plaintiffs' brands and the goodwill associated with them," all of which "negatively affects Plaintiffs' relationships with distributors, authors, professors and other teachers, and students." *Id.* ¶ 78.

### D. Defendant Ault's Actions

Plaintiffs allegedly purchased, or acquired from third parties who purchased, a total of eight Counterfeit Books from Ault's Online Storefronts. *See id.* ¶ 148. Plaintiffs contend that, after purchasing a Counterfeit Book from "HuckleberrysBooks," Ault's "Amazon [S]torefront," in July 2018, they sent a Notice of Infringement to Amazon. *Id.* ¶ 149. In August 2018, however, Plaintiffs allegedly purchased "a second Counterfeit Book from HuckleberrysBooks," and sent a second Notice of Infringement. *Id.* Plaintiffs maintain that, notwithstanding these Notices, Ault has "continued to sell Counterfeit Books." *Id.* According to the Complaint, Plaintiffs also "made

purchases" from "kipault7," Ault's "eBay Storefront" in 2019, which "again yielded Counterfeit Books." *Id.* ¶ 150. Plaintiffs assert that they subsequently identified "an additional nine Counterfeit Books" in Ault's inventory. *Id.* ¶ 151.

### E.  Plaintiffs' Asserted Bases for Personal Jurisdiction

Plaintiffs assert that this Court has personal jurisdiction over the Defendants, including Ault, pursuant to N.Y. C.P.L.R. § 302 because Defendants "transact business in New York, committed tortious acts within New York, and/or caused injury to Plaintiffs in New York," and because "Plaintiffs' claims arise from those activities." *Id.* ¶ 38. As to their business transactions, Plaintiffs also allege that Defendants "contract to supply goods, including counterfeit goods, in New York." *Id.* According to the Complaint, "Defendants sell textbooks, including counterfeit copies of Plaintiffs' copyrighted textbooks bearing Plaintiffs' trademarks, through online storefronts on highly interactive websites, such as eBay.com, which are continuously accessible, and target, sell, and ship goods, to consumers in New York." *Id.* As to the alleged tortious acts, Plaintiffs assert that Defendants "have committed acts of copyright and trademark infringement and counterfeiting" in New York and/or "outside New York causing injury to Plaintiffs in New York," and that they "expected or should reasonably have expected such acts to have consequences in New York" and "derive substantial revenue from interstate or international commerce." *Id.*

As to Ault in particular, Plaintiffs contend that he has sold over $1,000,000 in textbooks since 2017, "including more than $50,000 into the State of New York." *Id.* ¶ 152.

## II.    Procedural History

Plaintiffs initially filed this action on August 15, 2019, *see* Dkt. 1, and subsequently filed the First Amended Complaint—the operative complaint—on November 21, 2019, *see* Dkt. 65. On December 19, 2019, Defendant Ault moved to dismiss under Federal Rules of Civil Procedure

8(a), 12(b)(2), and 12(b)(6).  *See* Dkt. 88.  Plaintiffs filed their opposition on January 9, 2020, *see* Dkt. 94, and Ault replied on January 17, 2020, *see* Dkt. 95.

## DISCUSSION

**I.      Defendant Ault's Motion to Dismiss for Lack of Personal Jurisdiction**

On a 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  Where there has been no discovery or evidentiary hearing, as here, a plaintiff seeking to defeat a motion to dismiss based on the lack of personal jurisdiction need only make a prima facie showing that jurisdiction exists.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013); *Sullivan v. Ringling Coll. of Art & Design, Inc.*, No. 19-CV-1302 (RA), 2019 WL 6529823, at *2 (S.D.N.Y. Dec. 4, 2019); *Cenage Learning, Inc. v. Buckeye Books*, 531 F. Supp. 2d 596, 598-99 (S.D.N.Y. 2008).  Such a showing is made where the plaintiff's "own affidavits and supporting materials, contain[] an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  *S. New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).  On a 12(b)(2) motion, the Court must "construe the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor," *see Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008), and must accept the allegations in the Complaint as true "to the extent they are uncontroverted" by any affidavits submitted by the defendant, "which the district court may also consider," *see GlaxoSmithKline LLC v. Laclede, Inc.*, No. 18-CV-4945 (JMF), 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019).[3]  The Court need not, however, "draw

---

[3] Although it is well established that a district court may consider materials outside the pleadings on a 12(b)(2) motion, including "affidavits and other written materials," *see, e.g.*, *Commodity Futures Trading Comm'n v. TFS-ICAP, LLC*, 415 F. Supp. 3d 371, 380 (S.D.N.Y. 2019), the parties here have not submitted such materials.  In connection with his motion, Defendant Ault has only attached as exhibits the FAC in this action and the Second Amended Complaint in

argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (citations omitted). Thus, "[t]he plaintiff in opposing a 12(b)(2) motion cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported.'" *Sullivan v. Jersey Strong Licensing LLC*, No. 18-CV-7753 (RA), 2019 WL 3066492, at *2 (S.D.N.Y. July 12, 2019) (alterations and citation omitted).

Personal jurisdiction is analyzed under a two-step inquiry. First, the Court must determine whether the exercise of personal jurisdiction is proper under the laws of the forum state—here, New York. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). If so, the Court must then determine "whether the exercise of personal jurisdiction over the defendant comports with the Due Process Clause of the United States Constitution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). In cases such as this, where the claims arise under federal statutes that do not contain their own jurisdictional provisions—i.e., the Copyright Act and the Lanham Act—"federal courts are to apply the personal jurisdiction rules of the forum state, . . . provided that those rules are consistent with the requirements of Due Process." *Am. Buddha*, 609 F.3d at 35 (citations omitted). Thus, New York's long-arm statute, N.Y. C.P.L.R. § 302, governs this Court's analysis. *See McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 410 (S.D.N.Y. 2017); *Pearson Educ., Inc. v. Shi*, 525 F. Supp. 2d 551, 555 (S.D.N.Y. 2007).

### A.  N.Y. C.P.L.R. § 302(a)

Plaintiffs assert that this Court has personal jurisdiction over Ault under § 302(a)(1) and § 302(a)(3)(ii) of New York's long-arm statute. Because the Court concludes that personal

---

*McGraw-Hill Global Education Holdings, LLC v. Mathrani*, No. 16-cv-8530, a similar case involving four of the same plaintiffs, and Plaintiffs have not filed any supporting affidavits or other documents in support of their opposition.

jurisdiction is proper under § 302(a)(1), it need not determine whether it would also be proper under § 302(a)(3).  *See, e.g.*, *Franklin v. X Gear 101, LLC*, No. 17 Civ. 6452 (GBD) (GWG), 2018 WL 3528731, at *7 (S.D.N.Y. July 23, 2018), *report and recommendation adopted,* 2018 WL 4103492 (S.D.N.Y. Aug. 28, 2018); *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, No. 15-CV-06478 (ALC), 2016 WL 7451306, at *2 (S.D.N.Y. Dec. 27, 2016); *Mathrani*, 295 F. Supp. 3d at 410.

Section 302(a)(1) authorizes the exercise of specific jurisdiction over any non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state" so long as the cause of action arises from these activities.  N.Y. C.P.L.R. § 302(a)(1). "To make a prima facie showing of jurisdiction pursuant to section 302(a)(1), a plaintiff must establish, first, that defendant transacted business within the state of New York, and second that this action arises from that transaction of business."  *Sullivan*, 2019 WL 3066492, at *2 (quoting *Royalty Network v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 417 (S.D.N.Y. 2009)).

To "transact business" within the state, the defendant must have "purposefully avail[ed] himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (alterations and citation omitted).  "A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'"  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)); *see also Franklin*, 2018 WL 4103492, at *3 ("[T]ransacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality.") (citation omitted); *Fischbarg*, 9 N.Y.3d at 380 (noting that "[p]urposeful activities" are "those with which a defendant, through volitional acts, avails itself of the privilege of conducting

activities within the forum State") (internal quotation marks and citation omitted).  Moreover, the New York Court of Appeals has described § 302(a)(1) as a "single act statute," *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988), meaning that "[p]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015) (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010)); *see also Pearson Educ., Inc. v. Textbook Discounters*, No. 10 Civ. 324 (WHP), 2010 WL 3528866, at *2 (S.D.N.Y. Aug. 20, 2010) ("While the Court must look to the 'totality of the circumstances' to determine whether this standard is met, the sale of even a single item over the internet that is shipped into New York can give rise to personal jurisdiction.").

Nonetheless, not every "transaction" will give rise to jurisdiction under § 302(a)(1).  Under certain circumstances, moreover, "no single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (internal quotation marks, citation, and emphasis omitted); *see also Licci*, 673 F.3d at 62 (explaining that a defendant's "ongoing course of conduct or relationship in the state may" establish jurisdiction under this provision, even when there is no "individual act" sufficient to confer jurisdiction); *Shi*, 525 F. Supp. 2d at 555 ("Jurisdiction may also be founded on the totality of the defendant's conduct rather than any single act.").  Ultimately, "it is the quality of the defendant['s] New York contacts that is the primary consideration" when determining whether jurisdiction is appropriate under § 302(a)(1).  *Licci*, 673 F.3d at 62.

As this Court has previously noted, "[t]he 'advent of the internet' has of course created 'a new set of challenges' regarding personal jurisdiction." *See DH Servs., LLC v. Positive Impact, Inc.*, No. 12 Civ. 6153 (RA), 2014 WL 496875, at *6 (S.D.N.Y. Feb. 5, 2014) (quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000)).  On the one hand, "[b]ecause websites are 'generally speaking, equally accessible everywhere,' . . . the mere availability of the site to users in New York, standing alone, does not amount to transacting business in the state for purposes of section 302(a)." *Royalty Network*, 638 F. Supp. 2d at 418 (citations omitted); *see also Camacho v. Emerson Coll.*, No. 18 Civ. 10600 (ER), 2019 WL 5190694, at *3 (S.D.N.Y. Oct. 15, 2019) ("Operating a website that may be accessed from New York, without more, does not bring the operator within the jurisdiction of New York courts.").  On the other hand, a company that "'make[s] sales to customers in a distant state' via a website can become 'subject to the jurisdiction of that state's courts.'" *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 85 (E.D.N.Y. 2006) (quoting *NFL v. Miller*, No. 99 Civ. 11846, 2000 WL 335566, *1 (S.D.N.Y. Mar. 30, 2000)).

To determine whether a defendant's internet activity rises to the level of "transacting business" in New York, such that § 302(a)(1) is satisfied, courts in the Second Circuit "apply a 'sliding scale' test based on the level of a website's interactivity." *McGraw-Hill Glob. Educ. Holdings, LLC v. Khan*, 323 F. Supp. 3d 488, 494 (S.D.N.Y. 2018) (citation omitted); *see also Best Van Lines*, 490 F.3d at 251 ("[T]he likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet.") (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).  At one end of the spectrum are "passive websites," or those that are "limited to making information available to users," the operation of which, without more, does not rise to the level of a transaction for purposes of jurisdiction. *See Sullivan*, 2019 WL 6529823, at

11

*3 (citation omitted).  At the other end of the spectrum are "highly interactive" websites, which "allow[] for transactions to be completed, for example by allowing the purchase of goods or services, . .  and can support the exercise of New York's jurisdiction over those transactions." *Camacho*, 2019 WL 5190694, at *3; *see also, e.g.*, *Sullivan*, 2019 WL 6529823, at *3 ("Interactive websites knowingly transmit goods or services to users and if made available to New York residents, the activities can be sufficient for obtaining personal jurisdiction over a defendant.") (citation omitted); *Khan*, 323 F. Supp. 3d at 494 ("[I]f a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction.") (citation omitted); *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").  "Many websites, however, fall within a middle category, permitting the exchange of information between users in another state and the defendant. . . . This middle category may be a basis for jurisdiction depending on the level and nature of the exchange."  *Camacho*, 2019 WL 5190694, at *3 (alterations, internal quotation marks, and citations omitted).

Plaintiffs allege that Ault has sold and distributed at least eight Counterfeit Books, in violation of Plaintiffs' copyright and trademark rights, through his Online Storefronts on three different Online Marketplaces—eBay, Amazon, and Abebooks.  *See* FAC ¶¶ 34, 148.  As an initial matter, Online Marketplaces like eBay and Amazon are highly interactive websites that are widely available to United States customers, including those located in New York, and thus can serve as the basis for personal jurisdiction.  *See Grand v. Schwarz*, No. 15-CV-8779 (KMW), 2016 WL 2733133, at *3 (S.D.N.Y. May 10, 2016) (collecting cases where courts found jurisdiction based on defendants' operation of websites through which New York consumers could purchase

12

products); *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) (describing a website "that does more than provide information about a product and allows customers to purchase goods online" as a "highly interactive website" that may provide grounds for personal jurisdiction under § 302(a)); *Hsin Ten*, 138 F. Supp. 2d at 456 (describing websites that "enable the viewer to purchase [products] online, download an order form, download an application to become an 'independent affiliate', and ask questions of an online representative" as "highly interactive"); *see also* FAC ¶¶ 49-59.

As relevant here, courts in this Circuit have found that personal jurisdiction may be established "when out-of-state defendants allegedly have sold copyright-infringing merchandise over the Internet to customers in New York." *See Shi*, 525 F. Supp. 2d at 556 (collecting cases). The Court's inquiry into whether such transactions are sufficient to satisfy § 302(a)(1), however, is complicated here by the fact that Ault allegedly sold the Counterfeit Books through Online Storefronts, not his own website. *See, e.g.*, *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458 (JS) (ETB), 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012) (noting that "the question of whether the transaction occurred in New York is more complicated because the sale of allegedly infringing goods occurred online through Defendants' Amazon storefront and the goods were shipped to New York by Amazon"). Courts in this district have nonetheless concluded that "[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *See Lifeguard Licensing Corp.*, 2016 WL 3748480, at *3. To determine "whether a defendant who sells through Internet storefronts is subject to personal jurisdiction, courts distinguish between 'commercial vendors who use it as a means for establishing regular

business with a remote forum' and 'occasional sellers who use an internet service once to sell goods to the highest bidder who happens to be in the forum state.'" *Mathrani*, 295 F. Supp. 3d at 412 (quoting *Lifeguard Licensing Corp.*, 2016 WL 3748480, at *3). Personal jurisdiction has been found to be proper as to those in the first category, but improper as to those in the second category "assuming no additional contacts with the forum state." *Lifeguard Licensing Corp.*, 2016 WL 3748480, at *3 (citations omitted); *see also EnviroCare Techs.*, 2012 WL 2001443, at *3 ("When faced with the use of Amazon or eBay to transact business, courts have instead focused on the extent to which the website 'is used as a means for establishing regular business with a remote forum.'") (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)).

Plaintiffs allege that Defendants "target and ship" the Counterfeit Books to customers located in the United States, including customers located in New York, *see* FAC ¶ 67, and that Ault in particular has sold over $1,000,000 in textbooks since 2017, "including more than $50,000 into the State of New York," *see id.* ¶ 152. Plaintiffs also assert that the Defendants who operate Amazon and eBay Storefronts—which includes Ault—have sold copies of textbooks published by Plaintiffs to customers in New York. *See id.* ¶¶ 34, 67. As other courts in this district have found, Ault's internet activity puts him in the first category, and thus, the "transacts business" element of § 302(a)(1) is satisfied. *See, e.g.*, *Mathrani*, 295 F. Supp. 3d at 412 ("This regular offering and sale of textbooks to New York through online marketplaces puts [defendants] in the first category, even if they do not control their online storefronts or their interactivity to the same extent that they control their own website.'") (alterations, internal quotation marks, and citation omitted); *Lifeguard Licensing Corp.*, 2016 WL 3748480, at *3 ("Defendants here are alleged to fall into the first category. They allegedly conduct their business of selling infringing garments on the Amazon platform; their sales are nationwide and include New York. Consequently, jurisdiction is proper

14

under § 302(a)."); *EnviroCare Techs.*, 2012 WL 2001443, at *4 ("Defendants in the present case fall into the [first] category . . . [because] even though [they] did not personally manage the websites through which they sold their products, their internet-based activities established regular business with foreign jurisdictions, including New York."). Indeed, at this stage of the litigation, the Court must construe all reasonable inferences in Plaintiffs' favor, including by "credit[ing] the Complaint's allegation that Defendant[] operate[s] a website at which customers, including New York customers, can purchase the allegedly infringing goods." *See Lifeguard Licensing Corp.*, 2016 WL 3748480, at *3.

The Court's analysis does not end there, however. To establish personal jurisdiction under § 302(a)(1), the cause of action must also "arise from" the defendant's business activities within New York. The "arising from" element does not require "a causal link between the defendant's New York business activity and a plaintiff's injury," but rather a "relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-69 (2d Cir. 2013) (citation omitted). "A claim 'arises from' a particular transaction 'when there is some articulable nexus between the business transacted and the claim sued upon, or when there is a substantial relationship between the transaction and the claim asserted.'" *Capitol Records, LLC v. VideoEgg, Inc.*, 611 F. Supp. 2d 349, 361 (S.D.N.Y. 2009) (quoting *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). "The Court must consider 'the totality of the circumstances surrounding the defendants' activities in New York in connection with the matter giving rise to the lawsuit' to determine if there is 'a direct relation between the cause of action and the in-state conduct.'" *Id.* (quoting *Hoffritz For Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir. 1985)) (alterations and emphasis omitted). "[A] connection or nexus that is 'merely

15

coincidental' or, 'at best, tangential' is 'insufficient to support jurisdiction.'" *Id.* (quoting *Sole Resort*, 450 F.3d at 104). As the New York Court of Appeals has explained, however, the inquiry "is relatively permissive," and "causation is not required" to satisfy this second prong. *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012). Rather, the plaintiff's claims need only be "in some way arguably connected to" the defendant's business transactions in New York. *See Licci*, 20 N.Y.3d at 340.

With these principles in mind, the Court concludes that Plaintiffs have sufficiently alleged that their claims "arise from" Ault's business activities in New York. Plaintiffs assert copyright and trademark infringement claims against Ault in connection with his alleged sales of counterfeit copies of Plaintiffs' textbooks through his Online Storefronts. Construing the allegations and all reasonable inferences in Plaintiffs' favor, the Court agrees that Ault's transaction of business through highly interactive websites, including to New York customers, is "the same business through which he [allegedly] sold the counterfeit textbooks at issue." *See* Pl. Opp'n at 6-7. Thus, the second prong of § 302(a)(1) is also met. *See, e.g.*, *Hypnotic Hats*, 2016 WL 7451306, at *3 (concluding that § 302(a)(1)'s second requirement is satisfied where "Plaintiff's trademark infringement claims arise out of allegations that Defendants offered and sold the infringing products in New York through their websites").

The Court is not persuaded by Ault's assertion that "[n]o aspect of the claims against [him] stems from his alleged activity in New York" because while he is "alleged to have sold textbooks to purchasers in New York, which is an entirely legal activity," "Plaintiffs' purported claims against [him] are based on their allegations that he sold eight (8) allegedly counterfeit textbooks to purchasers somewhere other than New York." *See* Def. Reply at 2. It is true that Plaintiffs do not allege that a particular Counterfeit Book was sold or distributed by Ault to a specific customer

in New York.  But they nonetheless have satisfied the "relatively permissive" showing required for this prong.  *See Licci*, 20 N.Y.3d at 339.  Plaintiffs assert, among other things, that Ault has sold more than $50,000 worth of textbooks in New York since 2017.  *See* FAC ¶ 152.  Similar to the defendant in *McGraw-Hill Global Education Holdings, LLC v. Mathrani*, Ault's sales of such a large volume of textbooks to New York customers through highly interactive Online Marketplaces like eBay and Amazon constitute "business transactions [that] are essentially the same conduct on which Plaintiffs' claims are premised—i.e., the sale of counterfeit textbooks through online marketplaces," even if "not all of those sales were counterfeit or of Plaintiffs' textbooks."  *Mathrani*, 295 F. Supp. 3d at 412; *see also id.* at 412 n.3 (noting that Plaintiffs' out-of-state receipt of Defendant's counterfeit books further "suggest[s] that at least some of the [] New York sales may be of counterfeit copies of Plaintiffs' textbooks."); *cf. Hypnotic Hats*, 2016 WL 7451306, at *3 (explaining that "[i]t does not matter that Defendants' New York sales make up a small percentage of their total sales" because "[a] single act of shipping a product into the state is sufficient to support jurisdiction").[4]

Moreover, accepting Ault's position would lead this Court to "too narrowly construe[] the nexus requirement, which merely requires the cause of action to 'relate to' defendant's minimum contacts with the forum."  *Chloé*, 616 F.3d at 167; *see also Franklin*, 2018 WL 3528731, at *7

---

[4] The parties cite several cases involving similar facts and claims, and even plaintiffs, as those here.  Although some of those cases involve allegations that the defendants sent allegedly infringing products specifically to customers in New York, *see, e.g.*, *Textbook Discounters*, 2010 WL 3528866, *2; *Cenage Learning, Inc. v. Buckeye Books*, 531 F. Supp. 2d 596, 599 (S.D.N.Y. 2008); *Shi*, 525 F. Supp. 2d at 555-56, such specific allegations are not required to find that a cause of action "arises from" a defendant's business activity within the meaning of § 302(a)(1).  Indeed, other similar cases have concluded that jurisdiction was proper without referencing any such allegations.  In *McGraw-Hill Global Education Holdings, LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), for instance, the court did not separately address the "transacting business" and "arising from" prongs, but rather, concluded that it had personal jurisdiction under § 302(a)(1) because defendants owned and operated "highly interactive online websites and forums," which had "received thousands of visits from customers located throughout the United States, including in this District," and which "allow[ed] prospective customers in New York to browse and purchase" certain items by "submit[ting] an order online."  *See id.* at 494-95 (internal quotation marks and citations omitted).

("The Second Circuit has warned district courts against narrowly construing this nexus requirement, which merely requires the cause of action to 'relate to' defendant's minimum contacts with the forum.") (quoting *Chloé*, 616 F.3d at 167) (internal quotation marks omitted).  It would also run contrary to the New York Court of Appeals' admonition that the standard for the "arising from" prong is a "relatively permissive" one.  *See Licci*, 20 N.Y.3d at 339.  In short, the Court cannot conclude that Plaintiffs' copyright and infringement claims are "completely unmoored" from Ault's alleged transaction of business in New York.  *See Licci*, 732 F.3d at 168-69.  Nor can it find that the "nexus" between the legal claims here and Ault's New York activity is "merely coincidental" or "tangential."  *See Capitol Records*, 611 F. Supp. 2d at 361.  To the contrary, the alleged harm to Plaintiffs "stems from the same type of conduct as that which forms the basis of [Ault's] commercial activity in New York."  *See* Pl. Opp'n at 8 n.4.  Because Plaintiffs' causes of action against Ault "arise from" his transaction of business in New York, jurisdiction under § 302(a)(1) is proper.

## B.  Constitutional Due Process

Ault does not substantively address the constitutional requirements of due process.  Rather, he merely states that, "[b]ecause Plaintiffs have failed to allege jurisdictional facts sufficient to satisfy New York's long-arm statute, the Court need not conduct the second step of the two-step analysis by considering whether exercising jurisdiction over [him] would comport with the Due Process Clause of the U.S. Constitution."  *See* Def. Mot. at 12.[5]  Nonetheless, even after concluding that personal jurisdiction is proper under § 302, a court "must make the ultimate determination whether this jurisdiction satisfies constitutional due process."  *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007).

---

[5] Ault also does not address these constitutional requirements in his reply brief, even though Plaintiffs specifically assert in their opposition that exercising jurisdiction here comports with due process.  *See* Pl. Opp'n at 12-14.

The due process test for personal jurisdiction has "two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloé*, 616 F.3d at 164. First, "[w]ith respect to minimum contacts, [the Court] must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Court's exercise of personal jurisdiction over Ault comports with the minimum contacts requirement "for the same reasons that it satisfies New York's long-arm statute." *See id.* at 171; *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements."). Like § 302(a)(1)'s requirement that the defendant "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws," *see CutCo Indus.*, 806 F.2d at 365 (alterations omitted), due process contains a similar "purposeful availment" requirement to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of 'random' 'fortuitous,' or 'attenuated' contacts," *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). By distributing, and offering to sell textbooks—including the Counterfeit Books—to New York consumers, and by in fact selling at least $50,000 worth of textbooks in New York, Ault's conduct was "purposefully directed toward the forum State." *Chloé*, 616 F.3d at 171 (citation omitted); *see* FAC ¶¶ 34, 66-67, 152.

Second, "[w]ith respect to [the] analysis of reasonableness as part of the due process inquiry, [the Court must] ask whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Chloé*, 616 F.3d at 164 (quoting *Int'l Shoe*, 326 U.S. at 316). "The Supreme Court has held that courts must evaluate the

following factors as part of this 'reasonableness' analysis: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.* at 164-65 (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113-14 (1987)).   Where a defendant has "purposefully directed its activities at the forum state," as here, he "may still defeat jurisdiction on due process grounds" by "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Licci*, 732 F.3d at 173 (quoting *Burger King*, 471 U.S. at 477).

As an initial matter, Ault has not offered *any* argument that "other considerations" would "render jurisdiction unreasonable" here.   In any event, analysis of the *Asahi* factors supports the conclusion that exercise of personal jurisdiction over Ault is constitutional.   First, although Ault is a Tennessee resident and there may be some burden in traveling to New York to defend this suit, "that burden is minimal given 'the conveniences of modern communication and transportation.'" *Mathrani*, 295 F. Supp. 3d at 414 (quoting *Licci*, 732 F.3d at 174); *see also Chloé*, 616 F.3d at 173 ("[G]eneralized complaints of inconvenience arising from having to defend himself from suit in New York do not add up to 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)).   Second, New York has an interest in adjudicating the case as all Plaintiffs maintain a place of business in New York, and at least some Plaintiffs maintain their principal places of business here.  *See* FAC ¶¶ 6-10.   Indeed, a state often has a "manifest interest in providing effective means of redress for its residents," *Chloé*, 616 F.3d at 173 (quoting *Burger*

*King*, 471 U.S. at 483), including "resident corporate entities," *Mathrani*, 295 F. Supp. 3d at 414. For similar reasons, and because Plaintiffs conduct some, if not all, "of their publishing business out of New York, and, as such, many of the witnesses are located in New York," *see* Pl. Opp'n at 14, the third and fourth factors are satisfied. Finally, the shared interest of the states in furthering substantive social policies such as protecting intellectual property rights and preventing counterfeiting weighs in favor of jurisdiction. *See Lifeguard Licensing Corp.*, 2016 WL 3748480, at *4. Thus, exercising jurisdiction over Ault satisfies the reasonableness inquiry of the Due Process Clause.

Accordingly, Ault's motion to dismiss for lack of personal jurisdiction is denied.[6]

### III.    Defendant Ault's Motion to Dismiss for Failure to State a Claim

Ault also moves to dismiss pursuant to Rules 8(a) and 12(b)(6). Under Rule 8, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "The purpose of Rule 8(a) 'is to provide fair notice of the claims and to enable the adverse party to answer the complaint and prepare for trial.'" *Mathrani*, 295 F. Supp. 3d at 415 (quoting *Strunk v. U.S. House of Representatives*, 68 F. App'x 233, 235 (2d Cir. 2003)). Generally, only a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised" fails to satisfy Rule 8(a)(2). *Strunk*, 68 F. App'x at 235 (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must thus plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[6] Because the Court concludes that it may exercise personal jurisdiction over Ault, it need not address Plaintiffs' request for leave to conduct jurisdictional discovery. *See* Pl. Opp'n at 12 n.6.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that merely contains "unadorned, the defendant-unlawfully-harmed-me accusation[s]" or "naked assertion[s] devoid of further factual enhancement" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation omitted). In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

As a preliminary matter, Ault apparently takes issue with the manner in which Plaintiffs have pleaded, asserting claims "by 'Plaintiffs' against 'Defendants,'" without—he contends—clearly indicating "the basis upon which relief is sought against" him in particular. *See* Def. Mot. at 13. While "[i]t is well-established in this Circuit that plaintiffs cannot simply 'lump' defendants together for pleading purposes," at the same time, "nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each." *See McClean v. Cty. of Westchester*, No. 17-CV-4492 (CS), 2018 WL 6329420, at *6 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019) (citations omitted). But the Complaint here is not one based on impermissible "group pleading." *See Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 352 (S.D.N.Y. 2018) ("Complaints that rely on group pleading fail to differentiate as to which defendant was involved in the alleged unlawful conduct [and] are insufficient to state a claim.") (internal quotation marks and citation omitted). "Whether a complaint should be dismissed based on impermissible group pleading hinges on whether adequate notice is given that will enable the

adverse party to answer and prepare for trial . . . and identify the nature of the case." *McClean*, 2018 WL 6329420, at *6 (internal quotation marks and citation omitted); *see also Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) ("The key to Rule 8(a)'s requirements is whether adequate notice is given.").

Not only are the Complaint's allegations as to Ault sufficient to put him on "fair notice," *Wynder*, 360 F.3d at 79, but also the exhibits attached to the Complaint further clarify—to the extent not already evident—which claims are asserted by which Plaintiffs against him. Based on Exhibits A and C, for instance, it is clear that Plaintiffs assert copyright infringement claims against Ault based on his alleged infringement of the copyrights of Plaintiffs McGraw-Hill, Cengage, Pearson, and Bedford. According to Exhibit D, Plaintiffs' trademark infringement claims against Ault are based on his alleged infringement of the Marks of McGraw-Hill, Cengage, and Pearson. The Complaint, particularly in conjunction with its exhibits, sufficiently gives Ault notice of the allegations and claims asserted against him. Moreover, "[r]equiring Plaintiffs to name *all* of the infringed works that may be part of the alleged counterfeiting scheme at the pleading stage would be a fool's errand—that is the point of discovery." *Mathrani*, 295 F. Supp. 3d at 415 (emphasis in original).

For similar reasons, the Court agrees with Plaintiffs that, at this time, there is no "claim by Elsevier," "trademark counterfeiting claim by [Bedford]," or "secondary copyright infringement" claim asserted against Ault for the Court to dismiss under Rule 12(b)(6). *See* Pl. Opp'n at 15. Accordingly, Ault's motion under Rules 8(a) and 12(b)(6) is denied.

**CONCLUSION**

For the reasons set forth above, Defendant Ault's motion to dismiss is denied.  The Clerk

of Court is respectfully directed to terminate the motion pending at Dkt. 88.  No later than July 14,

2020, Ault shall file an answer to the First Amended Complaint, and Plaintiffs shall file a letter

updating the Court as to the status of the other Defendants in this action, including those that have

not yet appeared, as well as those on whom alternative service has been ordered.

SO ORDERED.

Dated:   June 30, 2020
         New York, New York

Ronnie Abrams
United States District Judge

24